UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WALTER TANNER,

                Plaintiff,

-against-

MTA LONG ISLAND RAILROAD/ DBA METROPOLITAN TRANSPORTATION AUTHORITY; LISA MARTINEZ; WILLIE JENKINS; KEVIN McCAFFREY,

                Defendants.

1:22-CV-9831 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff Walter Tanner, who is appearing *pro se*, filed this action asserting claims under 42 U.S.C. §§ 1981 and 1983, as well as claims under state law, seeking declaratory relief, injunctive relief, and damages. He may also be attempting to assert a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff sues: (1) "MTA Long Island Railroad/DBA Metropolitan Transportation Authority" ("LIRR"); (2) Lisa Martinez, an LIRR Human Resources Business Manager; (3) Willie Jenkins, an LIRR Human Resources Business Director; and (4) Kevin McCaffrey, referred to by Plaintiff as an LIRR "in-house counsel" or an LIRR General Attorney. Plaintiff's claims arise from the alleged harassment he experienced in his former LIRR workplace, which, he asserts, ultimately culminated in the termination of his LIRR employment on or about May 22, 2015.

      By order dated November 21, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. Eight days later, on November 29, 2022, Plaintiff filed an application for the Court to request *pro bono* counsel. (ECF 5.) On December 15, 2022, Plaintiff filed a letter in which he requests that this Court seal an action that he filed in the New York Supreme Court, New York County ("New York Supreme Court"), and

that he appealed to the New York Supreme Court, Appellate Division, First Department ("Appellate Division").[1]

For the reasons set forth in this order, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead his claims under Title VII and Section 1983 in an amended complaint. The Court also denies Plaintiff's requests to seal his state court action and appeal.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3). The Court may further dismiss untimely *pro se* claims *sua sponte*, so long as the Court grants the *pro se* litigant notice and an opportunity to be heard. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). Leave to amend need not be granted, however, if amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim. . . ." *Panther Partners Inc. v. Ikanos Commc' ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

---

[1] Plaintiff does not mention it, but the Court has learned that the Appellate Division dismissed Plaintiff's appeal on November 15, 2022, two days before Plaintiff filed his compliant in this court on November 17, 2022.

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following: Plaintiff began his employment as an LIRR Human Resources Business Partner in January 2014. In or around December 2014, he was approached by Defendant Jenkins, an LIRR Human Resources Director, who handed him a résumé from a job applicant who is the daughter of a former LIRR Senior Vice President. Jenkins wanted Plaintiff to consider that applicant for a position for which the application period had already closed, and for which that résumé had not been submitted in the required manner.

Plaintiff was concerned that the applicant was not qualified, that the manner in which her résumé had been submitted to him was unfair to the other applicants who had applied in a timely

and proper manner, and that Jenkins's submission of that résumé was in violation of the LIRR's anti-nepotism policies. Plaintiff raised his concerns with Jenkins and with an LIRR hiring manager. The hiring manner did not respond to his concerns, and Jenkins told him "'you need to understand how the politics is played around here.'" (ECF 2, at 4.) Plaintiff also raised his concerns with an individual identified as Ms. Meilick, who was then the LIRR's Senior Director of Human Resources, and is now Vice President of LIRR Administration. She told him that "she only wanted to have [the applicant's résumé considered] as part of the pool of candidates and [that it] should not receive special treatment." (*Id.* at 5.)

After Plaintiff raised his concerns with Meilick, Jenkins "became antagonistic and hostile towards" Plaintiff. (*Id.*) Defendant Martinez, an LIRR Human Resources Business Manager, also "became hostile towards" Plaintiff. (*Id.*) Martinez began to question Plaintiff about his job performance and experience, and made false accusations about Plaintiff's tone of voice and statements to other employees. Plaintiff was also "singled out for work improvement. . . . Jenkins and Martinez on multiple occasions told [him] that he screwed up the candidacy of [the applicant whose résumé Jenkins had submitted to him] without a good reason." (*Id.*)

Plaintiff was instructed to send that applicant a rejection letter. Thereafter, the defendants "harassed [Plaintiff] with emails and questions regarding [that applicant] and [Plaintiff] was subjected to intense, frivolous, manufactured, [and] fabricated written warnings well after [he] returned to [the] office after spending the month of March 2015 in grand jury duty." (*Id.* at 6) Jenkins later told Plaintiff that he was going to hire the applicant for another position. "Martinez and Jenkins questioned every aspect of [Plaintiff's] work in order to cast aspersion on his professional integrity because of the anti-nepotism stan[ce] that he took." (*Id.*) Plaintiff then complained to the Inspector General of the Metropolitan Transportation Authority ("MTA"),

4

"who interviewed him regarding his complaint but did not take any steps beyond the interview." (*Id.* at 7.)

Plaintiff was denied a pay raise at the direction of Meilick. On or about May 22, 2015, he was summoned to a meeting, where he was informed that he was being fired "for performance." (*Id.* at 8.) Plaintiff was detained, and was escorted out of the LIRR office building where he had worked, by police officers because Defendant McCaffrey, an LIRR "in-house counsel" and General Attorney, falsely accused Plaintiff of attacking him.

Plaintiff seeks declaratory judgment holding "that [the defendants'] conduct, practices, and acts . . . [were] illegal." (*Id.* at 12.) He also seeks: (1) reinstatement; (2) "credit and vesting [with respect to the] MTA Pension Plan"; (3) "[a]ll time off banks maxed out upon reinstatement"; and (4) "[e]xpungement of negative, fabricated notices, letters and/or other instruments used to perpetuate [his] unjustified termination from [his] personnel file." (*Id.*) He further seeks damages.

Plaintiff alleges that he has also sought relief for the injuries mentioned above in the state courts – first, in the New York Supreme Court, and on appeal, in the Appellate Division. In addition to the relief mentioned above, "Plaintiff seeks to carry[]over [the] case to allow the supremacy of [this] court to determine issues based on federal codes, statutes and general provisions of New York [S]tate law and federal law." (*Id.* at 1.) He asserts that, when he sought "to move the Justices of the Appellate Division to dismiss [the] Motion for Summary [J]udmgent presented [to the] lower . . . [c]ourt, [they] denied [him] due process in [his] effort[s] to correct errors, omissions and negligence of [his] retained counsel during proceedings of the court of first instance." (*Id.*) Plaintiff, thus, seeks "to carry[]over [this action] and seek[s] redress from this court." (*Id.*)

In addition to the other relief he seeks, Plaintiff specifically asks the Court to enjoin Defendant McCaffrey "in application of any corporate policy and precedence in applying correction action up to and including termination and subsequently litigated cases in state court against company policy to send such cases to outside counsel [sic]." (*Id.* at 1-2.) He alleges that McCaffrey discriminated against him in violation of Title VII.

## DISCUSSION

A.  **The *Rooker Feldman* doctrine**

To the extent that Plaintiff asserts claims for relief that challenge the final judgments of the New York Supreme Court and of the Appellate Division in his state court proceedings, the Court must dismiss those claims under the *Rooker-Feldman* doctrine. Under that doctrine, federal district courts lack authority to review final state court orders and judgments where the federal court plaintiff seeks relief that invites the federal court to reject or overturn the state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine . . . recognizes that 28 U.S.C. § 1331[,] [the statute granting federal district courts' federal question jurisdiction,] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments . . . ."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257))); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, . . . unless otherwise provided by Congress, *see, e.g.,* 28 U.S.C. § 2254 (habeas

6

corpus review).") (citation omitted). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction. . . ." *Exxon Mobil Corp.*, 544 U.S. at 291.

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites district court review and rejection of the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

Plaintiff appears to challenge the New York Supreme Court's previous grant of the defendants' motion for summary judgment in the labor and employment action that he brought in that court which arose from the same allegations that he asserts here; he also appears to challenge the Appellate Division's order dismissing his appeal of the New York Supreme Court's decision on November 15, 2022, two days before he filed his complaint in this court, on November 17, 2022. The *Rooker-Feldman* doctrine bars this Court from reviewing such challenges. The Court therefore dismisses any claims for relief in this action that challenge the New York Supreme Court's grant of the defendants' motion for summary judgment in Plaintiff's state court action and the Appellate Division's decision to dismiss his associated appeal, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

The Court also lacks the authority to order a state court action or appeal sealed. Thus, the Court denies Plaintiff's request for such relief.

**B.      Claims under 42 U.S.C. § 1981**

The Court must dismiss Plaintiff's claims under 42 U.S.C. § 1981 against all of the defendants, which appear to be a subdivision of the MTA (the LIRR) and employees of that

subdivision and, thus, all state actors.[2] This is because Section 1981 protects individuals from certain impairments in private settings, but "does not provide a separate private right of action against state actors." *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018). Plaintiff brings his claims against state actors and must therefore pursue his claims for violations of the rights protected under Section 1981 in claims brought under 42 U.S.C. § 1983. *See id.* at 619 (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989)). Accordingly, the Court dismisses Plaintiff's claims under Section 1981 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     Claim under Title VII**

To the extent that Plaintiff asserts a claim under Title VII against Defendant McCaffrey, the Court must dismiss that claim because Title VII does not provide for claims against individual employees. *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012). The Court therefore dismisses Plaintiff's claim under Title VII against McCaffrey, as an employee of the LIRR, for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

Even if the Court were to construe Plaintiff's complaint as asserting claims of discrimination under Title VII against the proper defendant, Plaintiff's former employer, the LIRR, Plaintiff has alleged no facts showing that one of his characteristics that is protected by Title VII (race, color, sex, religion, or national origin) was a motivating factor in any adverse employment action taken against him by the LIRR. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85-86 (2d Cir. 2015) (pleading standard for claims of employment

---

[2] "The MTA is a public benefit corporation under [New York State law], and as such its action is deemed state action." *Majer v. Metro. Transp. Auth.*, No. 90-CV-4608, 1990 WL 212928, at *3 (S.D.N.Y. Dec. 14, 1990). The "LIRR is a public benefit corporation operating as a subsidiary of the [MTA] . . . so that its actions may be deemed State action. . . ." *Kaelin v. Long Island R.R.*, 504 F. Supp. 656, 658 (S.D.N.Y. 1980).

discrimination under Title VII). The Court therefore also dismisses such claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff 30 days' leave to replead his claim(s) under Title VII in amended complaint in which he names the proper defendant (his former employer) and alleges facts sufficient to state a claim of employment discrimination under that statute against that defendant.

**D.** **Claims under 42 U.S.C. § 1983**

Plaintiff's claims under 42 U.S.C. § 1983 appear to be untimely. In the State of New York, there is a three-year limitations period for claims brought under Section 1983. *Owens v. Okure*, 488 U.S. 235, 249-51 (1989). For claims of false arrest/false imprisonment brought under that statute,[3] the applicable limitations period begins to run when the illegal arrest/confinement without legal process ends. *See Wallace*, 549 U.S. at 388-90 (2007) (claim of false arrest/false imprisonment under Section 1983 accrues on the date that the illegal arrest/confinement without legal process begins, and the applicable limitations period beings to run when that arrest/confinement ends). Otherwise, such claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *E.g., Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013). In addition, "[a]lthough federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas*, 480 F.3d at 641 (citation omitted).

---

[3] A Section 1983 claim of "'[f]alse arrest [remedies] an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with [a] false imprisonment [claim].'" *Evans v. City of New York*, 308 F. Supp. 2d 316, 329 n.8 (S.D.N.Y. 2004) (quoting *Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999) (Glasser, J., dissenting)), *aff'd*, 123 F. App'x 433 (2005) (summary order). Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

With respect to such tolling under New York State law, "the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Id.* at 642 (citation omitted). It is the plaintiff who must show "that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim 'have ceased to be operational.'" [4] *Id.* (citation omitted).

Plaintiff asserts claims under Section 1983 arising from the alleged harassment he suffered at his former workplace, the LIRR, which, he asserts, culminated in the termination of his LIRR employment on or about May 22, 2015; this includes claims of false arrest/false imprisonment under Section 1983 arising from being allegedly detained and escorted out of an LIRR office building by police on that date. It appears that, at the latest, however, Plaintiff had three years from that date, or until on or about May 22, 2018, to file a complaint asserting timely claims under Section 1983 arising from those allegations. He did not file his complaint in this court, commencing this action, until November 17, 2022, over four years later. Moreover, he alleges no facts showing why the applicable limitations period should be equitably tolled. The Court therefore dismisses Plaintiff's claims under Section 1983 for failure to state a claim on which relief may be granted, as untimely. *See* § 1915(e)(2)(B)(ii).

In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff 30 days' leave to replead his claims under Section 1983 in an amended complaint in which he alleges facts

---

[4] Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the action is timely filed. *See Abbas*, 480 F.3d at 640. *Sua sponte* dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011).

showing why his claims under Section 1983 are timely or why the applicable limitations period should be equitably tolled. *See Abbas*, 480 F.3d at 640.

## CONCLUSION

The Court dismisses this action and denies Plaintiff's request to seal his state court action and appeal. The Court dismisses Plaintiff's claims under federal law, and denies the abovementioned request, for the reasons discussed above. The Court, however, grants Plaintiff 30 days' leave to replead his claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983 as discussed above.

If Plaintiff fails to file an amended complaint with the time allowed, or fails to show cause why the Court should excuse such failure, the Court will enter judgment dismissing this action; the Court will dismiss Plaintiff's claims under federal law for the reasons discussed above, *see* 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 12(h)(3), and will decline to consider, under its supplemental jurisdiction, Plaintiff's claims under state law, *see* 28 U.S.C. § 1367(c)(3).[5]

---

[5] The Court declines to consider Plaintiff's application for the Court to request *pro bono* counsel until after Plaintiff has filed an amended complaint in compliance with this order. If Plaintiff fails to file an amended complaint, or fails to show cause why the Court should excuse such failure, the Court will enter judgment that, along with dismissing this action, will deny Plaintiff's application as moot.

11

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:   January 17, 2023
         New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge
